IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

ANDRE WEST,
   *Defendant.*

Criminal Action No. ELH-18-0045

**MEMORANDUM OPINION**

Andre West filed a pro se Motion for Compassionate Release. ECF 38. Thereafter, through counsel, West filed a "Supplemental Memorandum in Support of Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (ECF 42), along with nine exhibits. ECF 42-1 to ECF 42-9. The government filed an opposition to West's pro se submission (ECF 37) and to the motion submitted by counsel. ECF 45. It also submitted two exhibits. ECF 45-1 to ECF 45-2. And, defendant replied. ECF 48.

I shall refer to ECF 38 and ECF 42 collectively as the "Motion." No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

**I.   Background**

On January 25, 2018, a grand jury in the District of Maryland returned a single-count indictment against the defendant for possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). ECF 1. West entered a plea of guilty on May 8, 2018 (ECF 18), pursuant to a Plea Agreement. ECF 19. The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment of 27 months of incarceration. *Id.* ¶ 8.

The parties contemplated a base offense level of 24 pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") based on the quantity of heroin and cocaine. *Id.* ¶ 7(a). And, the parties contemplated a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. *Id.* ¶ 7(b). Moreover, the parties agreed to another two-level reduction, pursuant to U.S.S.G. § 2D1.1(b)(17) because the defendant met the safety valve criteria. *Id.* ¶ 7(c). The parties also agreed to a Criminal History Category of I. *Id.* ¶ 7(d).

The Plea Agreement included a stipulation of facts. *Id.* at 8. According to the stipulation, on May 17, 2017, law enforcement executed a search warrant at defendant's home and found "(1) over $32,000 in cash, (2) 5 digital scales, (3) approximately one kilogram of cocaine, (4) approximately 120 grams of heroin; and (5) approximately one kilogram of what appeared to be a cutting agent such as quinine." *Id.* And, the parties agreed that defendant "possessed the cocaine and heroin with the intent to distribute them." *Id.*

According to the Presentence Investigation Report ("PSR," ECF 24), West had a base offense level of 24 and a Criminal History Category of I. *Id.*, ¶¶ 14, 29. After the deductions contemplated in the Plea Agreement, pursuant to U.S.S.G. § 5C1.2 and U.S.S.G. § 3E1.1, the defendant had a final offense level of 19. *Id.* ¶ 23. Based on an offense level of 19 and a Criminal History Category of I, West's Guidelines called for a period of incarceration ranging from 30 to 37 months of imprisonment. *Id.* ¶ 68. Because the defendant satisfied the criteria under 18 U.S.C. § 3553(f)(1)-(5), he was not subject to a statutory minimum sentence. *Id.*

Sentencing was held on November 20, 2018. ECF 27. At the time, the defendant was 38 years old. ECF 24 at 3. He stood five feet nine inches tall and weighed 160 pounds. ECF 24, ¶ 45. Pursuant to the Plea Agreement, I imposed a term of 27 months' imprisonment. ECF 30 (Judgment); ECF 31 (Statement of Reasons).

West, who was born in 1979, is now 41 years of age. ECF 42-1 (Computation Data) at 1. He is presently incarcerated at FCI Allenwood Low. *Id.* West currently weighs 208 pounds. ECF 42-6 (Medical Records) at 24, 11. This equates to a BMI of approximately 30.7. ECF 42 at 4.

Defendant has served about 21 months of his 27-month sentence. ECF 42-1. This equates to about 77% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). *Id.* Accounting for good time credit, he has served about 87% of his sentence. *Id.* Defendant has a projected release date of February 4, 2021. *Id.* He is eligible for home detention through the BOP on November 15, 2020, and is scheduled to be released on home detention on November 17, 2020. ECF 42 at 2.

West's medical history includes HIV, hypertension, obesity, and prediabetes. ECF 42 at 3; ECF 42-6. Defendant also suffered a gunshot wound to his lower back at age 17, was diagnosed with a heart murmur at age 20, and had two hernia surgeries at ages 20 and 29. ECF 24, ¶ 46.

Through counsel, defendant petitioned the Warden for compassionate release on July 23, 2020. ECF 42-8. The Warden denied defendant's request on August 7, 2020. ECF 42-9. The government does not contest that the defendant has satisfied the exhaustion requirement. ECF 45 at 1.

Additional facts are included, *infra*.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

3

(4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement."  U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements.  U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>   (I)  suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D) is titled "**Other Reasons.**"  It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.  The Court may not rely on the Program Statement, however.  Rather, the Court must consider the Sentencing Commission's policy statements.  *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *Dillon*, 560 U.S. at 827.  But, compassionate release is a "rare" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.    COVID-19[1]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[2] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of October 14, 2020, COVID-19 has infected more than 7.8 million Americans and caused over 215,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Oct. 14, 2020).

---

[1] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many schools and businesses have reopened, others are subject to substantial restrictions. And, in view of the recent resurgence of the virus in some parts of the country, businesses and schools are again facing closure or restrictions.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Id.* (citation omitted). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index

9

("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an example of an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See Id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of

10

COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 37 at 4-5 (detailing measures that BOP

11

has implemented at BOP facilities).  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[3]  As of October 14, 2020, the BOP had 126,162 federal inmates and 36,000 staff.  Also as of October 14, 2020, the BOP reported that 1,652 inmates and 736 BOP staff currently tested positive for COVID-19; 13,938 inmates and 1,216 staff had recovered from the virus; and 126 inmates and two staff member have died from the virus.  And, the BOP has completed 63,111 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 14, 2020).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Allenwood Low, where the defendant is a prisoner, as of October 18, 2020, the BOP reported that no inmates or staff have currently tested positive for COVID-19 and one inmate has recovered at the facility.  And, the facility has completed 129 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 18, 2020).

## IV.   Discussion

West moves for compassionate release on the ground that he has four health conditions that render him particularly vulnerable to COVID-19.  ECF 42 at 5-12. In particular, defendant suffers from HIV, hypertension, obesity, and prediabetes.  *Id.*; ECF 42-6 (Medical Records) at 1, 8, 10, 24.  West currently takes medication to treat his HIV and hypertension.  *Id.*  Moreover, West contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served.  *Id.* at 13-14.

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

The government acknowledges that West's medical condition constitutes an "extraordinary and compelling" reason for relief in light of the CDC guidance. ECF 45 at 2. But, the government contends that compassionate release is not warranted because it would undermine the goals of sentencing and the BOP has not reported any confirmed, active cases at FCI Allenwood Low. *Id.* at 2. The government suggests that the Court should deny defendant's request, without prejudice, so defendant can make an updated request if the conditions in the prison change. *Id.* (citing *United States v. Zayas-Mercado*, Crim. No. JKB-18-321 (D. Md. July 13, 2020)).

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including HIV, obesity, hypertension, and prediabetes, qualify as a compelling reason for compassionate release. *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason). *See also, e.g., Bruno v. United States*, __ F. Supp. 3d __, 2020 WL 4192282, at * 3 (E.D. Va. July 16, 2020) (granting compassionate release to defendant with HIV); *United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (granting compassionate release to defendant with asthma, migraines, hypertension, high

13

cholesterol, prediabetes, and borderline obesity); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity constituted an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason).

As noted, the government concedes that, under the CDC guidance, at least one of West's medical conditions constitute an "extraordinary and compelling reason." ECF 45 at 1. Accordingly, I am satisfied that West readily satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As indicated, the government contends that the factors under § 3553(a) militate against granting West's Motion. ECF 45 at 2. According to the government, because defendant "has already received a below-guidelines sentence and permission to spend a significant part of that sentence in home confinement," "a further reduction would create unwarranted sentencing disparities." *Id.* Notably, the government does not suggest that West would pose a danger to the community if released.

Defendant acknowledges the seriousness of his offense. ECF 42 at 14. However, he also contends that it was "aberrant given his background and character." *Id.*

14

Indeed, West's crime did not involve allegations of weapons or violence. Moreover, defendant had two prior convictions: trespassing in 2006 and attempted theft in 2008. ECF 24, ¶¶ 26, 27. Defendant received probation before judgment in both cases. *Id.*

Further, because of defendant's non-violent history and the nature of his offense, Mr. West was released on pretrial supervision from January 29, 2018, until his self-surrender on January 28, 2019. ECF 24 at 1. For a year, while the defendant was on pretrial release, he was compliant with his pretrial supervision, which included regularly attending treatment for generalized anxiety disorder and substance abuse at Bright Horizons Behavioral Health and working at a barbershop. ECF 42 at 2-3; ECF 24, ¶ 7.

West's good behavior while incarcerated also warrants recognition under 18 U.S.C. § 3553(a). In his short time at FCI Allenwood Low, West has completed six courses, worked as a compound orderly, and attended the Residential Drug Abuse Program from June 2019 until March 2020. ECF 42 at 3; ECF 42-3 (Program Review). And, West has not had any disciplinary infractions since April 2019. *Id.*

While incarcerated, West has maintained strong relationships with his family. ECF 42 at 14; ECF 42-4 (letter from defendant's sister); ECF 42-5 (letter from defendant's aunt). Defendant also has a release plan that includes living with his sister and employment at his cousin's construction business. ECF 42-4.

Moreover, as noted, West has already served about 21 months in prison. ECF 42-1. This equates to about 77% of his total sentence. But, factoring in credit for good conduct, West has served about 87% of his sentence, and has approximately one month until his release to home confinement and three months until his release. ECF 42 at 1-2.

15

As I see it, West's incarceration for a period of 21 months is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing West's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A).

## V. Conclusion

For the forgoing reasons, I shall grant the Motion (ECF 38; ECF 42).

An Order follows, consistent with this Memorandum Opinion.

Date: October 20, 2020                               /s/
                                            Ellen Lipton Hollander
                                            United States District Judge